# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### (Fort Pierce Division)

CASE NO.: 2:25-cv-14064

-------------------------------------------------X

OMAR LIMON, :
                  :
           Plaintiff, :

v. :
                  :

ROBERT GRGEK and AYC :
HOLDINGS LLC dba AMERICAN :
YACHTS AND CUSTOM BOATS and :
AYC MARINE GROUP :
                  :
           Defendants. :

-------------------------------------------------X

## COMPLAINT

Plaintiff, OMAR LIMON ("**Plaintiff**"), by and through undersigned counsel, hereby files this Complaint against AYC HOLDINGS LLC a limited liability company doing business as AMERICAN YACHTS AND CUSTOM BOATS and AYC MARINE GROUP ("**AYC**") (collectively, "**Defendants**") for declaratory relief and states the following in support thereof:

## PARTIES, JURISDICTION, AND VENUE

1. This is an action for declaratory relief seeking a judgment declaring that the Notice of Intent to File Claim of Lien and any claim of lien by Defendants upon Plaintiff's yacht is invalid.

2. Plaintiff Omar Limon, the owner of the subject yacht, is an individual domiciled in Miami-Dade County, Florida, and is otherwise *sui juris*.

**GILLER, P.A.**
**1111 BRICKELL AVENUE, SUITE 1550 | MIAMI, FL, 33131 | TELEPHONE: [305] 999-1906 | FACSIMILE: [305] 489-8530**
4927-7026-1536, v. 2

3.      Defendant AYC Holdings LLC, which does business as American Yachts and Custom Boats, is a limited liability company conducting business in the State of Florida. AYC also does business under the name AYC Marine Group, among other monikers.  AYC's stated primary place of business is 250 N Congress Avenue, Suite D, Delray Beach, FL, 33445, from which it conducts routine, systemic and not isolated commercial activities.  Without limitation, and upon information and belief, AYC also conducts business at 3601 South Dixie Highway, Stuart, FL 33405, which is where Plaintiff believes the subject yacht is located.

4.      This Court has subject matter jurisdiction pursuant to 46 U.S.C. § 31343(c)(2) and 28 U.S.C. § 2201.

5.      Under 46 U.S.C. § 31343(c)(2), venue is appropriate in the United States District Court for the Southern District of Florida, Fort Pierce Division, as the subject vessel is located in Stuart Florida, which is in the Southern District of Florida.

## GENERAL ALLEGATIONS

6.      This case concerns a claim of lien upon Plaintiff's yacht for fees related to repairs allegedly performed by Defendants on Plaintiff's yacht, which was purchased in November 2022. Precisely a year after it was purchased, the yacht suffered damage during a hurricane that struck Miami.  During the hurricane, the yacht suffered damage from impact against the wall of the marina where the yacht was docked.

7.      Shortly after purchasing his yacht, Limon had his yacht insured with State Farm. That policy was active in November 2023, when the yacht was damaged.  To date, State Farm has reimbursed Limon for all payments made to AYC, which are described more fully below.

8.      After the storm, Limon contacted the dealer that sold him the yacht and requested a referral for repairs. The dealer put Plaintiff in contact with Robert Grgek ("**Robert**"), Defendants' representative.

9.      After several calls, Plaintiff arranged for Robert and AYC to repair his yacht. Robert, who held himself out as AYC's representative, inspected the yacht for damage, during which a small crack on the side of the boat was identified.

10.     Robert advised Plaintiff that the damage was easily repairable and that his company could handle the work, and the parties entered into an agreement (the "**Service Agreement**") with respect to the repair work.  Robert then took the yacht to a repair facility in or around February 2024.  A copy of the Service Agreement is attached hereto as **Exhibit A**.

11.     Prior to and after the execution of the Service Agreement, Robert, on Defendant's behalf assured Plaintiff that the repairs would be completed within 30 days, and to reinforce the prompt repairs, agreed to pay (or credit) Plaintiff $100.00 for each day beyond the agreed upon repair period until the yacht was returned. Conservatively, Plaintiff estimates the late fees due to Plaintiff somewhere in the range of $33,000.00.  Additionally, Defendant also agreed to credit Plaintiff's insurance deductible against his invoices.

12.     From February 2024 to the present, AYC has continued to ask for payments above and beyond their initial estimate.  Initially, AYC estimated that the cost of the repairs to the yacht would be $200,000.  Just a month later, AYC claimed that there was more water in the yacht than AYC initially realized, and it would cost an additional $50,000 to repair and drain the yacht.  At that time, Robert told Plaintiff that the repairs could be completely within a month.

13.     Nevertheless, after another several months, AYC again told Limon that the yacht was still waterlogged, and it would require another $50,000 to drain and repair the boat.  This brought the cost of repairs to $300,000, or $100,000 above the estimate.

14.     Then, in the fall of 2024, AYC, again, claimed that there was *still* water in the yacht that needed to be drained, which would cost an addition $50,000, bringing the total costs of repairs to $350,000, almost double the cost of the initial estimate.  In each instance, Defendants have not provided any proof or explanation as to why the yacht needed to be drained while it was in their possession and repairs were .

15.     Thus, Defendants have claimed that the yacht needed to be drained on three separate occasions in the year *after* Defendants took possession of the yacht and began, or should have begun, repairs to fix a small crack on the side of the boat which, by Defendants' own admission, was easily repairable and should take no more than a few months.

16.     This was understandably surprising to Limon, not only given the price but because this is the third time that AYC has claimed that the yacht needed to be drained.  Among the many reasons underscoring Plaintiff's skepticism was that the yacht had been out of the water for almost a year and Defendant refused to explain how the water continued to infiltrate the yacht's hull. Because of these unusual circumstances, Limon has refused to make the requested payment until he can inspect his yacht to confirm that Defendants have actually made the repairs for which they seek payment.

17.     For more than two months, however, AYC has refused to allow Limon to inspect his yacht, raising a variety of excuses, none of which hold water.  In particular, AYC claims that it would be a violation of Service Agreement to allow for an inspection of the yacht before payment is received.

**GILLER, P.A.**
**1111 BRICKELL AVENUE, SUITE 1550  |  MIAMI, FL, 33131  |  TELEPHONE: [305] 999-1906  |  FACSIMILE: [305] 489-8530**
4927-7026-1536, v. 2

18.     However, the Service Agreement does not expressly prohibit such inspection.  In fact, in the case of insurance providers, the Service Agreement contemplates that inspections will occur, implying what should be obvious: that Limon, as the owner of the yacht and the holder of the insurance policy, has a right to inspect his property before making payments well-above the initial estimate he was provided for the cost of repairs.

19.     Despite no requirement, Plaintiff provided Defendant (and Defendant's counsel) the name, license and insurance information for his inspector, who is a seasoned yacht surveyor. Despite acquiescing to Defendant's bizarre requests, Defendant has continued to refuse to allow Plaintiff to inspect the yacht.

20.     As a result of Defendants' refusal to permit Plaintiff to inspect his own yacht to determine the scope and quality of the repairs that have been made, if any, Limon was forced to file a Complaint for a True Bill of Discovery in an action captioned *Limon v. Grgek et al.*, Case No. 2024-023938-CA-01, Circuit Court of the Eleventh Judicial Circuit, Miami-Dade County, Florida.  Through that action, Plaintiff seeks judgment permitting discovery so that Plaintiff may inspect the yacht to determine, *inter alia*, whether the yacht is waterlogged as Defendant claims and to determine the scope and quality of repairs made to date, if any.

21.     At this juncture, all representations made by Robert and AYC have proven untrue and Plaintiff is continues to have serious concerns about what repairs, if any, have been made, the quality of same, and whether or not the yacht is seaworthy.

22.     To date, Limon has paid $282,085.93 to Defendants.  Thus, Plaintiff has paid AYC almost $100,000 more than initial estimated cost to repair damage that, according to Robert, was easily repairable but Defendants have yet to provide any evidence that such repairs were actually made to the boat.

**GILLER, P.A.**
**1111 BRICKELL AVENUE, SUITE 1550  |  MIAMI, FL, 33131  |  TELEPHONE: [305] 999-1906  |  FACSIMILE: [305] 489-8530**
4927-7026-1536, v. 2

23.     Then, on or about February 11, 2025, Defendants provided Limon with a Notice of Intent to File Claim of Lien (the "**Notice of Intent**"), wherein Defendants notified Limon that they intend to file a claim of lien upon the yacht in the amount of $105,543.12, of which $38,841.00 is attributed to "storage fees" and $66,702.12 is attributed to "repairs to the vehicle and labor."  A true and correct copy of the Notice of Intent is attached hereto as **Exhibit B**.

24.     Defendants are, in essence, claiming that the repairs to Plaintiff's yacht total $387,629.05, almost double the initial estimate – $282,085.93 for prior payments made by Plaintiff plus the $105,543.12 allegedly due to Defendants pursuant to the Notice of Intent.

25.     This is not the first time that Defendant has attempted to misuse the trust bestowed in him by watercraft owners.  Complaints and ensuing judgments against Robert, Defendant's principal, and affiliates are attached as **Composite Exhibit C**.  All of the claims and judgments stem from promises and assurances strikingly similar to those made to Plaintiff, none of which were fulfilled, and the plaintiff's (and judgment creditors) damaged to the tune of hundreds of thousands of dollars.

26.     Consistent with his prior misconduct, Defendant, nothing more than Grgek's alter ego, has continued to inflate costs, assess expenses that were never agreed to, and has most recently relocated the yacht to frustrate Plaintiff's ability to perform a routine and entirely reasonable request to inspect his property.  Plaintiff is the still the owner of the Yacht and is entitled to inspect the yacht in order to verify the scope and quality of repairs before being obligated to remit any further payment.

27.     Plaintiff has paid all amounts due to Defendants such there are no outstanding amounts due to Defendants based on the invoices submitted and the scope and cost of repair work agreed upon by Plaintiff, Defendants, and State Farm.

28.     All conditions precedent to the commencement and maintenance of this action have been satisfied, waived and/or excused.

## COUNT I

29.     Plaintiff adopts and realleges the allegations contained in paragraphs 1 through 25 as if fully and expressly set forth at length herein.

30.     To date, Plaintiff has paid $282,085.93 in connection with the repair work performed on his yacht by Defendants pursuant to the invoices provided and the scope and cost of repair work agreed and authorized by Plaintiff and State Farm, the yacht's insurer.

31.     Plaintiff, having paid almost $100,000 in excess of the initial $200,000 estimate provided by Defendants, has satisfied all payment obligations to Defendants such that Defendants are not entitled to claim a lien upon Plaintiff's yacht.

32.     Furthermore, any additional amounts charged by Defendants, for which they seek to claim a lien upon the yacht, are unreasonable as they are far in excess of industry standards relative to the scope of the repairs that were required.

33.     Moreover, to the extent Defendants performed any additional work that resulted in additional reasonable expenses in excess of the $282,085.93 previously paid by Plaintiff, Defendants are at fault for any delay in payment based on their refusal to permit Plaintiff to inspect the yacht.

34.     Accordingly, Defendants' claim of a lien upon Plaintiff's yacht in the amount of $105,543.12 is, therefore, unsupported by any evidence and is invalid.

35.     Defendants are not entitled to claim a lien upon Plaintiff's yacht for any additional, reasonable expenses that may be due to Defendants unless and until Plaintiff is permitted to

**GILLER, P.A.**
**1111 BRICKELL AVENUE, SUITE 1550  |  MIAMI, FL, 33131  |  TELEPHONE: [305] 999-1906  |  FACSIMILE: [305] 489-8530**
4927-7026-1536, v. 2

conduct an inspection of the yacht to confirm the scope and quality of repair work that was actually performed.

36.     Given the foregoing, Plaintiff is entitled to a judgment declaring that Defendants' Notice of Intent to File Claim of Lien and any claims of lien are invalid.

WHEREFORE, Plaintiff respectfully requests that this Court issue a judgment declaring that Defendants' Notice of Intent to File Claim of Lien is invalid and that Defendants' claim of lien is invalid, permitting recovery of costs and attorney's fees, and for such further and additional relief as this Court finds necessary and/or proper.

Respectfully submitted,

**JASON B. GILLER, P.A.**
*Attorneys for Plaintiff*
1111 Brickell Ave., Suite 1550
Miami, FL 33131
Phone: (305) 763-8318
Fax: (305) 489-8530

By: */s/ Jason B. Giller*
Jason B. Giller, Esq.
Fla. Bar No: 77441
Service2@gillerpa.com

**GILLER, P.A.**
**1111 BRICKELL AVENUE, SUITE 1550  |  MIAMI, FL, 33131  |  TELEPHONE: [305] 999-1906  |  FACSIMILE: [305] 489-8530**
4927-7026-1536, v. 2